**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**


THOMAS E. CHAPMAN and                                        PLAINTIFFS
BRENDA CHAPMAN


v.                                        Civil Action No. 4:08-CV-00049-HTW-LRA


COCA-COLA BOTTLING CO. CONSOLIDATED,
AMERICAN CASUALTY CO. OF READING, PA.,
CNA CLAIMSPLUS, INC., and OCCUPATIONAL &
REHABILITATIVE ASSOCIATES, INC.                             DEFENDANTS


<u>**ORDER OF REMAND**</u>

Before this court is a motion to remand [**docket no. 9**] submitted by the plaintiffs

Thomas E. Chapman and Brenda Chapman under Title 28 U.S.C. § 1447,[1] and a

motion for summary judgment filed by Occupational & Rehabilitative Associates, Inc.

[**docket no. 21**].  Because this court finds the motion to remand well-taken and that it

should be granted, the court lacks subject matter jurisdiction to address the motion for

summary judgment.

---

[1]Title 28 U.S.C. § 1447(c) provides that, "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case."

Plaintiffs seek to return the above styled and numbered cause to the Circuit Court for the Second Judicial District of Jasper County, Mississippi.  The defendants removed this lawsuit from that state court to this federal court pursuant to Title 28 U.S.C. §§ 1441(a)[2] and 1332,[3] the federal diversity jurisdiction statute.  Plaintiffs' motion to remand is opposed by the defendants who argue that the defendant Occupational & Rehabilitative Associates, the only non-diverse party and a citizen of Mississippi, has been fraudulently joined in this lawsuit.  Plaintiffs are resident citizens of Mississippi. Defendant Coca-Cola Bottling Co. Consolidated ("Coca-Cola"), Thomas Chapman's employer, is incorporated and has its principle place of business in North Carolina. American Casualty Company ("American Casualty"), Coca-Cola's workers' compensation insurance carrier, is incorporated and has its principle place of business in Pennsylvania.  American Casualty contracted with defendant CNA ClaimPlus, Inc., ("CNA") to investigate, administer and pay or deny and litigate claims against American Casualty's insureds.  CNA is incorporated and has its principle place of business in Illinois.  This court, having reviewed the parties' written briefs and oral arguments, rejects the defendants' claim of fraudulent joinder. This court, instead, finds the plaintiffs' arguments well taken and grants their motion to remand this action to the Circuit Court of Jasper County.

---

[2]Title 28 U.S.C. § 1441(a) states in pertinent part: "[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

[3]Title 28 U.S.C. § 1332 provides in pertinent part:(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between-(1) citizens of different States; ... "

## I.  Facts and Procedural History

The plaintiff Thomas E. Chapman ("Chapman") says that he injured his back on June 4, 2001, while setting up a soft drink display case at a grocery store, a duty of his job with defendant Coca-Cola.  Chapman had injured his back on prior occasions, while acting within the scope of his employment with Coca-Cola.  The June 2001 injury required surgery and other treatment, and caused Chapman to suffer temporary and permanent disability.

After his June 2001 injury, Chapman's boss, Willie Meador, told Chapman to go to Occupational Rehabilitative Associates ("ORA") for assessment and treatment.  Chapman Aff. at 1.  Over his twenty-five years of employment at Coca-Cola, Chapman had been directed to and been treated by a "company doctor" after multiple on-the-job injuries.  *Id* at 2.  He states in his affidavit that he was never told he had a right to select his own doctor.  *Id.*  He was seen by doctors at ORA on June 4, 11, 15, and 22.  Examining Physician's Statements, docket no. 21-2.  During these visits, ORA doctors prescribed medicine and therapy; and workers' compensation initially paid for this treatment.  Chapman Aff. at 1.  ORA then referred Chapman to a neurosurgeon, Dr. David Lee, at the Southern Neurological Institute in Hattiesburg, Mississippi.  *Id.*  On June 26, 2011, ORA sent a letter to Coca-Cola stating the following:

> The doctors of our clinic have all reviewed the chart of Mr. Thomas Chapman and are all in agreement that Mr. Chapman's condition is not work-related but is aggravated by work.  We have reviewed the MRI done by our clinic and reviewed the MRI that was done previously.  We feel that all of his injuries are from previous accidents and no new injury was noted.  We also agree that Mr. Chapman needs to continue to be off work as the condition is not caused by work but aggravated by work.  If we can be any more assistance with Mr. Chapman's care, please do not hesitate to call.

The letter was signed by Dr. Ronnie Ali, on behalf of ORA.

Chapman attempted to return to work, but when his injury prevented him from fully carrying out the duties of his job, Coca-Cola fired him.  *Id.*  Coca-Cola and the insurance carrier then denied workers' compensation benefits and refused to pay for an operation recommended by Dr. Lee.  *Id.*

After denial of his workers' compensation claim, Chapman hired an attorney and took his claim to the Mississippi Workers' Compensation Commission ("MWCC").  An administrative law judge at MWCC ruled in Chapman's favor in May 4, 2006.  Complaint, ¶ 14.  The MWCC affirmed, on appeal, that Chapman's injuries were compensable under Mississippi Workers' Compensation law.  *Id.*  Chapman says that until he pursued his claim with the MWCC, the ORA had never notified him or made him aware of its letter quoted above, which falsely stated his back injury was not work-related.  Chapman Aff. at 3.

Coca-Cola and American Casualty settled with Chapman for an amount equal to the value of his workers' compensation claim and outstanding medical bills associated with his compensable claim.  Complaint, ¶ 15.  The MWCC approved this settlement on May 30, 2007.  *Id.*  Defendants have subsequently failed to pay medical bills owed to University Medical Center and the Southern Neurological Institute.  *Id* at ¶ 18.  Pursuing this claim through the MWCC, say plaintiffs, satisfies their obligation to exhaust administrative remedies before bringing suit.

The plaintiffs filed this suit in state court on April 21, 2008, to recover damages resulting from "wrongful conspiracy to deny, wrongful denial, and wrongful refusal to pay benefits" which were owed to Chapman under Mississippi Workers' Compensation

law.  These damages include the attorney's fees paid to resolve Chapman's workers'
compensation claims, as well as, damages for pain, disability and the mental anguish
resulting from defendants' refusal to pay these benefits for several years, and the delay
in medical treatment caused by that refusal.  Plaintiffs also assert a claim for Brenda
Chapman's economic hardship, anxiety, mental anguish, and loss of companionship,
help and support from her husband.  Plaintiffs say that defendants are liable for punitive
damages for their grossly negligent, wanton, wilful and intentionally wrongful conduct.

## II. Improper Joinder

To establish that a non-diverse defendant has been improperly joined to defeat
diversity jurisdiction, the removing party must prove "(1) actual fraud in the pleading of
jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against
the non-diverse party in state court."  *Smallwood v. Illinois Central Railway Co*., 385
F.3d 568, 573 (5th Cir. 2004).  The removing defendants, in this case, have not alleged
fraud.  This court, then, will focus on the second prong of the improper joinder test.

To succeed on this second prong, the 5th Circuit Court has held that the
removing party has the burden to demonstrate "that there is no possibility of recovery
by the plaintiff against an in-state defendant, . . ." *Id; see Campbell v. Stone Ins., Inc.,*
509 F.3d 665, 669 (5th Cir. 2007)(stating "the burden of persuasion *on a party claiming
improper joinder* is a 'heavy one.'")(citations omitted; emphasis added).  The possibility
of recovery "however, must be reasonable, not merely theoretical." *Travis v. Irby*, 326
F.3d 644, 648 (5th Cir. 2003)(*citing Great Plains Trust Co. v. Morgan Stanley Dean
Witter & Co*., 313 F.3d 305, 312 (5th Cir. 2002)).  A district court may resolve an

improper joinder claim by conducting a Rule 12(b)(6)[4]-type analysis.  *Travis*, 326 F.3d at 648-49.  "Any contested issues of material fact, and any ambiguity or uncertainty in controlling state law" must be resolved in the plaintiff's favor.  *Id* at 649.  The court has the discretion to pierce the pleadings and conduct a summary inquiry.  *Id* at 648-49.

### III.  Analysis: Improper Joinder of Non-Diverse Defendant

Defendants American Casualty and CNA claim that plaintiffs have joined ORA merely to defeat diversity.  Defendants' arguments for improper joinder are multiple: 1) that ORA was dissolved as of December 29, 2001, and is no longer a viable corporate entity; 2) that plaintiffs' claims are conclusory allegations which do not meet the minimum pleading requirements to state a claim under Fed. R. Civ. P. 8(a)(2);[5] and 3) because ORA was not a party to the workers' compensation contract covering Chapman, but merely an agent for a known principal, it has no liability under Mississippi law.

### A.  Dissolution of ORA

Defendants American Casualty and CNA state in their response to plaintiffs' motion to remand that ORA "is no longer a viable corporate entity and does not exist according to the official records of the Secretary of State of Mississippi."  These

---

[4]  Fed.R.Civ.P. 12(b)(6) states:
(b) HOW TO PRESENT DEFENSES. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
. . .
(6) failure to state a claim upon which relief can be granted;

[5]  Fed.R.Civ.P. 8(a)(2) states:
(a) CLAIM FOR RELIEF. A pleading that states a claim for relief must contain:
. . .
(2) a short and plain statement of the claim showing that the pleader is entitled to relief;

defendants admit, however, that "the business operated by that corporate entity is, upon information and belief, still operational in some other business format."  Docket no. 15 at 2.

The plaintiffs point out that ORA was administratively dissolved pursuant to Miss. Code Ann. § 79-4-14.21.[6]  Plaintiffs provide a copy of the record for Occupational & Rehabilitative Associates, Inc., printed from the Mississippi Secretary of State's Business Services website, which indicates that ORA was administratively dissolved.

Administrative dissolution does not immediately terminate the corporation's existence and  "does not terminate the authority of its registered agent."  Miss. Code Ann. § 79-4-14.21(c)-(d).  Further, even when a corporation has been administratively dissolved prior to being named as a defendant in a lawsuit, the corporation may still be "amenable to suit under authority of section 79-4-14.05 of the Mississippi Code."[7]

---

[6]  Miss. Code Ann. § 79-4-14.21states:

(a) If the Secretary of State determines that one or more grounds exist under Section 79-4-14.20 for dissolving a corporation, he shall serve the corporation with written notice of his determination under Section 79-4-5.04, except that such determination may be served by first class mail.

(b) If the corporation does not correct each ground for dissolution or demonstrate to the reasonable satisfaction of the Secretary of State that each ground determined by the Secretary of State does not exist within sixty (60) days after service of the notice is perfected under Section 79-4-5.04, the Secretary of State shall administratively dissolve the corporation by signing a certificate of dissolution that recites the ground or grounds for dissolution and its effective date. The Secretary of State shall file the original of the certificate and serve a copy on the corporation under Section 79-4-5.04, except that such certificate may be served by first class mail.

(c) A corporation administratively dissolved continues its corporate existence but may not carry on any business except that necessary to wind up and liquidate its business and affairs under Section 79-4-14.05 and notify claimants under Sections 79-4-14.06 and 79-4-14.07.

(d) The administrative dissolution of a corporation does not terminate the authority of its registered agent.

[7]  Miss. Code Ann. § 79-4-14.05 states in pertinent part:

(b) Dissolution of a corporation does not:

. . .

*Schustz v. Buccaneer, Inc.*, 850 So.2d 209, 212 (Miss.App. 2003).  ORA's administrative dissolution does not necessarily bar this suit against it.

### B.  Fed. R. Civ. P. 8(a)(2)

Defendants argue that plaintiffs have made only conclusory allegations against ORA, but failed to plead sufficient facts to allege a cause of action.  As mentioned above, the standard to evaluate claims of improper joinder are similar to a Fed.R.Civ.P. 12(b)(6) analysis.  *Smallwood*, 385 F.3d at 573.  The defendants are correct in their assertion that the court must look to the factual claims made by plaintiffs and need not give credence to mere conclusory allegations.  *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2002).  Plaintiffs also are correct in their assertion that so long as they plead the basic rudiments of a claim, they are not required at the dawn of the lawsuit to connect every dot.

An illustrative case on this point is *Travis v. Irby*, 326 F.3d 644 (5th Cir. 2003), which is instructive on balancing factual pleading standards with a lack of discovery at the early phases of a case.  In *Travis v. Irby*, a mother filed suit in a Mississippi state court against Illinois Central Railroad and its train conductor for her son's death.  The train operated by Irby, the defendant train conductor, killed her son when it struck him at a railroad crossing.  Plaintiff claimed that Irby was negligent because, *inter alia*, he "failed to keep a proper and reasonable lookout."  326 F.3d at 649.  In her responses to

---

(5) Prevent commencement of a proceeding by or against the corporation in its corporate name;
(6) Abate or suspend a proceeding pending by or against the corporation on the effective date of dissolution; or
(7) Terminate the authority of the registered agent of the corporation.

interrogatories, plaintiff said she did not possess specific facts to support her allegations, but required expert testimony and testimony from eyewitnesses to support her allegations of Irby's negligence.  The railroad removed the case to federal court, saying that Irby had no independent liability apart from the railroad and, even if Mississippi law would allow liability, the plaintiff had no factual basis to allege a cause of action against Irby.

The district court denied plaintiff's motion to remand, finding that "neither Plaintiff nor Defendants have presented any substantive evidence regarding Defendant Irby. Defendants merely point to Plaintiff's lack of evidence, while Plaintiff apparently clings to the need for further discovery."  326 F.3d at 650.  The Fifth Circuit reversed, finding that the record should be considered as a whole, in light of the party bearing the burden of persuasion.  The court stated:

> "In this circumstance, in which the defendant has the burden of establishing fraudulent joinder and the plaintiff can clearly state a claim upon which relief can be granted as to the non-diverse defendant, the lack of substantive evidence as to the non-diverse defendant does not support a conclusion that he was fraudulently joined."  *Id.*

In this case, the plaintiffs have alleged specific tortious conduct by ORA, namely, conspiring with the other defendants to deny benefits legally due Chapman, and intentionally producing a fraudulent report to ensure that denial.  Undisputed facts available to plaintiffs at this stage of litigation are that Coca-Cola referred Chapman to ORA, Chapman was seen by doctors at ORA who diagnosed and treated him, workers' compensation benefits were initially granted, ORA then produced a report stating Chapman's injury was not work-related, after receipt of the report Coca-Cola and American Casualty reversed the decision and denied benefits, and Chapman was

unaware ORA had produced the report until he appealed his denial to the MWCC. Finally, when the Chapmans took their claim to the MWCC, the Workers' Compensation Commission determined the injuries were compensable.

This court finds no merit in defendants' argument that plaintiffs have urged only conclusory allegations against ORA.

### C.  Liability of Agent of Disclosed Principal

The defendants rely on *Bass v. California Life Ins. Co.*, 581 So.2d 1087 (Miss. 1991), and *Gallagher Bassett Svcs., Inc. v. Jeffcoat*, 887 So.2d 777, 784 (Miss. 2004), to support their primary legal argument--that ORA was an agent for a disclosed principal, Coca-Cola, and under Mississippi law,[8] had no liability apart from Coca-Cola.

In *Bass*, an insured employee, covered by her employer's group health policy, sued the policy administrator for bad-faith denial of insurance benefits.  The defendant administrator was a third party, which the insurance carrier contracted to "receive[ ] applications, review[ ] claims for coverage, receive[ ] premiums."  581 So.2d at 1089. The administrator "had the authority to pay claims up to $10,000 without prior approval from the carrier."  *Id*.  After the plaintiff concluded her case in chief, the trial court granted a directed verdict in favor of the claims administrator, finding that the defendant "had no duty under Mississippi law to act in good faith in the matter."  *Id*.  The trial court cited the case of *Griffin v. Ware*, 457 so.2d 936, 940 (Miss. 1984), to say:

> "adjusters employed by an insurer, who were not parties to the agreement
> for insurance, are not subject to an implied duty of good faith and fair

---

[8] Where subject matter jurisdiction is premised upon diversity of citizenship, Title 28 U.S.C. § 1332, the court applies the substantive law of the state in which it sits.  *Erie R.R. Company v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

>dealing to the insured.  [. . .] Appellees [claims adjusters] were not parties
>to the insurance contract between appellant [plaintiff] and their insurer,
>hence were not subject to an implied duty of good faith and fair dealing
>with [plaintiff].  [The claims adjusters'] duty was to their principal, not to
>[plaintiff].  *Bass*, 581 So.2d at 1090.

The Mississippi Supreme Court reversed the trial court, finding that although insurance claims adjusters and agents may not be held liable for simple negligence, "this Court believes that our ruling in *Griffin v. Ware* is now insufficient for the day.  Jurisprudence should not be in the position of approving deliberate wrong."  The Court applied a broader standard for liability from *Dunn v. State Farm Fire & Casualty Co.*, 711 F.Supp. 1359 (N.D.Miss. 1987), saying that "an adjuster could be deemed liable to an insured for gross and reckless negligence."  *Bass*, 581 So.2d at 1090.

After *Bass* was decided, the Fifth Circuit speculated whether the *Bass* standard of agent liability applied only in the context of insurance agents and adjusters.  *Gray v. Beverly Enterprises-Mississippi, Inc.*, 390 F.3d 400, 406 (5th Cir. 2004)(decided November 9, 2004).  In a lawsuit against a nursing home and its administrators for injury to residents, the district court determined that Mississippi state law precluded recovery against the administrators because they were agents of a disclosed principal.  The Fifth Circuit found the trial court to have erred, stating, "the cases relying on *Bass* are almost all in the context of insurance agents and adjusters.  Further, there have been several cases in which agents of disclosed principals were in fact held liable for negligence."  *Id*.

In the case of *Gallagher Bassett Svcs., Inc. v. Jeffcoat*, decided on December 16, 2004, approximately one month after the Fifth Circuit had decided *Gray v. Beverly*

*Enterprises-Mississippi, Inc.*, the Mississippi Supreme Court addressed federal court

opinions which questioned the clarity of the *Bass* standard, stating:

> As two federal court opinions make apparent, the absence of cases which
> discuss and apply the *Bass* standard has caused some confusion.
> However, we take this opportunity to revisit our holding in *Bass* and
> conclude it plainly states and we now reiterate that an insurance adjuster,
> agent or other similar entity may not be held independently liable for
> simple negligence ***in connection [with] its work on a claim***. Such an
> entity may be held independently liable for its work on a claim if its acts
> amount to any one of the following familiar types of conduct: gross
> negligence, malice, or reckless disregard for the rights of the insured. 887
> So.2d at 784 (emphasis added).

This court reads *Gallagher* to say that this bar to liability for agents applies

specifically to agents, claims adjusters, and related parties, who have a role in

determining coverage for insurance claims.  For defendants to successfully claim that

ORA lacks liability, ORA would either have to be an insurance agent, claims adjuster or

similar entity participating in the decision of an insurance claim, and have committed no

acts of gross negligence or worse.

Plaintiffs acknowledge that a doctor "who merely examines someone as the

agent for someone else–a prospective employer, a life insurance carrier, for

example–may not be held liable for negligently or falsely issuing an incorrect report."

Plaintiff's letter brief dated December 29, 2008.  Plaintiffs argue that this is not the case

with treating physicians, such as those with ORA, who owe a duty to their patient.

Further, say plaintiffs, this is a simple tort case, in which they have an independent

cause of action against all tort feasors who aided or contributed in the commission of

the tort.  *Hutto v. Kremer*, 76 So.2d 204, 208 (Miss. 1954)(quoting Section 85 of Cooley

on Torts (4th Ed.), "All who actively participate in any manner in the commission of a

tort, or who command, direct, advise, encourage, aid or abet its commission, are jointly and severally liable therefor.").[9]

In this case, the plaintiffs and defendants offer very different characterizations of ORA's role and relationships with respect to the other parties.  The other defendants' roles are outlined in the complaint.  American Casualty was the insurance carrier for Coca-Cola.  American Casualty contracted with CNA "to investigate, administer, pay or deny" claims for workers' compensation benefits.  Complaint, ¶ 10.

With respect to ORA, plaintiff says, Coca-Cola had "an agreement or arrangement of some kind" for ORA to evaluate and treat employees who were injured on the job.  *Id.*  Chapman, in his affidavit to this court, stated that ORA was the "clinic to which employees were supposed to go if they were injured on the job in order to be examined and treated."  Chapman Aff. at 2.  Chapman further stated that ORA "prescribed therapy and medicine" and that ORA was his "'treating physician' under the Mississippi Workers' Compensation law."  *Id.*

Defendants have provided an additional letter brief with an affidavit from the former President of ORA stating that ORA had "no formal written agreement . . . regarding evaluation and/or treatment of prospective, current or previous Coke employees" with Coca-Cola, American Casualty or CNA. Larochelle Aff., ¶ 3. Defendants maintain that Coca-Cola referred Chapman to ORA as directed by the

---

[9] "Tort reform" legislation passed in Mississippi in 1989 eliminated joint and several liability in favor of only several liability, except in cases where two or more parties intentionally conspire to commit a tort. *Robinson Property Group, Ltd. Partnership v. McCalman*, 51 So.3d 946, 950-51 (Miss. 2011).  Several liability, however, would suffice to impose liability on ORA if it contributed to commission of a tort.

Mississippi Workers' Compensation statute.  This statute says:

> The employer shall furnish such medical, surgical, and other attendance or treatment, nurse and hospital service, medicine, crutches, artificial members, and other apparatus for such period as the nature of the injury or the process of recovery may require.  The injured employee shall have the right to accept the services furnished by the employer or, in his discretion, to select one (1) competent physician of his choosing and such other specialist to whom he is referred by his chosen physician to administer medical treatment.  Miss. Code Ann. § 71-3-15(1).

The affidavit from former President of ORA stating that ORA had no contractual or formal relationship with Coca-Cola and the Medicaid statutory provision that Chapman had the right to accept the employer's referral or select a physician to "administer medical treatment" support plaintiffs' contention that there was no agency relationship between ORA and Coca-Cola.  These facts bolster the argument that ORA was Chapman's treating physician and was not acting under the authority of one of the other defendants as an agent.

Further, defendants, who bear the burden of persuasion on remand, have offered no evidence that ORA was an agent of Coca-Cola, American Casualty or CNA.  Mississippi legal precedent offers no guidance as to whether a treating physician falls under the definition of agent or "similar entity" cited in *Bass* and *Gallagher*.  Since *Gallagher* was decided in 2004, this court finds no Mississippi opinion providing a clear definition of who, other than insurance agents and claims adjusters, is encompassed within this standard.  The Fifth Circuit has generally applied the standard from *Gallagher* to professionals with whom the insurance company has a paid or contractual relationship.  *See, e.g.*, *Aiken v. Rimkus Consulting Group, Inc.*, 333 Fed.Appx.806 (5th Cir. 2009)(finding engineer hired by home owners' insurance carrier to assess damage

to insureds' home from Katrina was not liable under Mississippi law for actions related to assessment of claim); *see, e.g.*, *Berry v. Hardwick*, 152 Fed.Appx. 371 (5th Cir. 2005)(finding insurance agent who sold automobile policy and claims adjuster who investigated claim of theft of automobile could not be held liable for the tort of bad faith delay in processing claim).

"All ambiguities in controlling state law are resolved in favor of the nonremoving party." Travis, 326 F.3d at 648 (internal citations omitted). The question of who qualifies as a "similar entity" does not clearly include the treating physician. The bar to recovery under *Gallagher* and *Bass* is founded on the contractual relationship between the principal (the insurer) and its agents. Those agents have no duty to the insured, only to the principal. In this instance, if plaintiffs are correct, the treating physicians of ORA had a duty to provide a minimum standard of care to their patient, the insured. And, if as plaintiffs have alleged, ORA intentionally furnished a false report to assist Coca-Cola and CNA to avoid payment of benefits to Chapman, ORA also has liability as a tort feasor. Excluding ORA from this lawsuit under a theory of agency, in that circumstance, would allow Coca-Cola, American Casualty, and CNA to avoid liability by pointing to the report from ORA as evidence that they denied Chapman's workers' compensation claim in good faith.

When considering a motion to remand, the court need not decide that the plaintiff will likely win on the merits against the non-diverse defendant, only that he arguably has a reasonable basis for recovery. *See Travis,* 326 F.3d 644. Mississippi law cited by defendants as barring recover against ORA does not remove a reasonable possibility of recovery for the Chapmans. The removing defendants have failed to meet

15

their burden to show that plaintiffs have no reasonable basis for recovery against ORA.

### IV.  Conclusion

For the reasons stated above, this court finds that the defendants herein have not carried their burden of showing that in-state defendant ORA has been improperly joined in this action.  Because this Mississippi defendant is a proper party to the lawsuit, diversity jurisdiction is lacking and this court must remand this case to the Circuit Court for the Second Judicial District of Jasper County, Mississippi.  This court, therefore, grants plaintiffs' motion to remand [**docket no. 9**].

Defendant ORA has filed a motion for summary judgment [**docket no. 21**], which this court lacks jurisdiction to address on the merits.  The case with all outstanding issues will be remanded to state court.


**SO ORDERED**, this the 31st day of August, 2011.

**s/ HENRY T. WINGATE**
**UNITED STATES DISTRICT JUDGE**


Civil Action No. 4:08-CV-00049-HTW-LRA
Order of Remand

16